UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LESLIE ROOT,

                                        Plaintiff,              DECISION and ORDER
-vs-
                                                                17-CV-6498 CJS
CORNING COMMUNITY COLLEGE,

                                        Defendant.

_____

## INTRODUCTION

Plaintiff Leslie Root, proceeding *pro se*, asserts claims for employment discrimination under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII), the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL").   Now before the Court is Defendant's motion to dismiss the Complaint for improper service and for failure to state a claim. (Docket No. [#5]).   The application is granted in part and denied in part.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and the underlying administrative record.[1]   *See, Watkins v. Rochester Gen. Hosp.*, No. 13-CV-6386 CJS,

_____

[1]The Court "limit[s] itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," but does "not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *West v. Harkness*, Civ. No. 9:17-CV-621 (GTS/DJS), 2018 WL 3748344 at *2 (N.D.N.Y. May 29, 2018) (citations and internal quotation marks omitted).

2014 WL 1224680, at *1 (W.D.N.Y. Mar. 25, 2014) ("When the action involves federal discrimination claims that were filed with an administrative agency before they were brought here, the Court may consider the administrative record when ruling on a 12(b)(6) motion.") (citing *Holowecki v. Federal Express Corp.*, 440 F.3d 558, 565 (2d Cir.2006)).

In October 2011, Plaintiff began her employment with Corning Community College ("the College"). Beginning in November 2014, Plaintiff claims that she experienced various types of employment discrimination and retaliation.

Plaintiff first believes that she experienced disability-based discrimination, when Defendant failed to accommodate her disability and then retaliated against her. Plaintiff claims to be disabled due to "Polymyositis, Antiphospholipid antibody syndrome, Chiari 1 malformation, vision problems, spinal fracture and spinal stenosis."[2] In January 2012, Plaintiff first notified the College that she had a disability.[3] Subsequently, and prior to November 1, 2015, Plaintiff had "numerous discussions with [her] director and dean" concerning accommodations for her disability, though the specifics of those discussions are not alleged.[4] On April 1, 2015, Plaintiff contacted the College's Human Resources Office and requested unspecified accommodations.[5] Plaintiff contends that the College refused to accommodate her in different ways. For example, Plaintiff alleges that her supervisor refused to discipline a co-worker who moved the location of office supplies. Plaintiff also contends that her supervisor changed her working conditions by assigning her to work nights at a distant campus, even though her doctor had opined that such

---

[2] Complaint [#1] at p. 7.
[3] Complaint [#1] at p. 5.
[4] Complaint [#1] at p. 6.
[5] Complaint [#1] at p. 6.

working conditions were "making [the] disability worsen."[6]   Plaintiff also maintains that after she requested accommodations, she experienced retaliation, consisting of being "screamed at" and "ridiculed," and having a campus security guard harass her about her "parking tag."[7]

Plaintiff also believes that she experienced age-based discrimination.   In that regard, during the four years and four months of Plaintiff's employment, she held the position of a part-time "Learning Specialist."   Plaintiff, though, hoped to eventually be hired as a full-time Learning Specialist.   In that regard, there was a full-time position that was held by someone else, and Plaintiff believed that she was the likely candidate to fill that position when it became vacant. The full-time position eventually became vacant, and Plaintiff expressed interest in the position and was scheduled to be interviewed for the position.   However, prior to actually being interviewed for the position, Plaintiff's employment was terminated.[8]

The Complaint does not expressly explain the circumstances of Plaintiff's firing or the stated reasons given by the College.   The reasonable inference from Plaintiff's submissions, though, is that she was terminated after she objected to the aforementioned changes in her work assignment.[9]   Specifically, in or about February, 2016, Plaintiff was assigned to work nights at a distant campus, whereas she had previously worked days at a campus closer to her home.

---

[6]  Complaint [#1] at p. 7.

[7]  Complaint [#1] at p. 8.

[8]  *See*, Complaint, Docket No. [#1] at p. 9 ("By February 2016, after working five years during the day and doing very well I was next in line to take the full-time position and was being interviewed for it.   I was terminated before my interview[.]")

[9]  As will be seen below, Plaintiff's EEOC charge implied that her employment was terminated in retaliation for her reporting a male professor for inappropriate sexual misconduct toward students.   Plaintiff reiterates that assertion in her response to Defendant's motion. See, Docket No. [#7] at p. 3.   However, there are no plausible factual allegations linking her complaints about sexual misconduct by co-workers to the college in November 2015 to the termination of her employment in February 2016.   Rather, as noted, the factual allegations plausibly suggest that the termination was directly related to Plaintiff's unwillingness to work nights at the remote campus location.

In this regard, the Complaint states, in pertinent part:

> My director now had me doing the same duties as her full-time position but I was part-time, my hours were changed to nights on a different campus during bitter cold, icy winter nights despite my known vision impairment and mobility problems. I asked why and my director just seemed to no longer care. He[10] (my director) also refused to accept my doctor's letter that stated the hours and location change were making my disability worsen and just ignored it. I requested reasonable accommodations to assist with mobility, pain, ambulatory and fatigue issues associated with my disability and was completely ignored or told my hours would be given away, which is what happened instead of giving my original hours and location back to me.

Complaint [#1] at p. 7.

Subsequent to the termination of Plaintiff's employment, the full-time Learning Specialist's position was filled by a 23-year-old woman with less experience than Plaintiff.[11] Plaintiff also alleges that two younger employees were treated more favorably than her when they requested disability-based accommodations.[12]

Finally, Plaintiff alleges that she experienced sex-based discrimination and retaliation. Plaintiff maintains that at some point prior to November 2015, a male janitor employed at the college hugged and touched her, and told her that he had a "crush" on her. Plaintiff told the janitor to stop and reported the matter to her supervisor, however, the supervisor "did nothing." Subsequently, in or about November, 2015, the janitor began to angrily harangue her about items such as recycling containers.[13] Plaintiff also contends that she reported both a female co-worker and a male college professor for having inappropriate sexual interactions with

---

[10] Plaintiff's papers alternate between referring to her "director" as "she" and "he."
[11] *See*, Complaint, Docket No. [#1] at p. 9 ("[T]he position was given to a 23-year-old female part-time employee I was training.").
[12] Complaint [#1] at p. 9.
[13] Complaint [#1] at p. 8.

students, after which she experienced retaliation, including the aforementioned changes to her work schedule, and the aforementioned denials of her requests for disability-based accommodations.[14]

On or about May 11, 2016, Plaintiff filed an employment discrimination charge/complaint against the College with the U.S. Equal Employment Opportunity Commission ("EEOC").   The EEOC complaint alleges discrimination on the basis of disability and age, as well as retaliation for reporting sexual misconduct by college staff against students.   The EEOC charge does not allege that Plaintiff was herself sexually harassed.   The pertinent factual allegations in the EEOC Complaint are as follows:

My date of birth is December 31, 1961.

Two times each year I requested a reasonable accommodation to assist with mobility and fatigue issues associated with my disability.  My request was approved but it was not implemented.   My hours, days and place of work were constantly changed. Management refused to place supplies within my reach.  Handicapped parking spots were not properly enforced.

I believe that my request for a reasonable accommodation was not implemented in willful violation of Title I of the Americans with Disabilities Act of 1990, as amended.

In November 2015 a student told me about an incident of sexual harassment that had occurred between himself and a male professor.   I reported the harassment to the school as required by my role as a student activities advisor.   On or about February 12, 2016, I was terminated.

After I was terminated my position was changed to full time and was given to a woman approximately 23 years of age.

I believe that I was terminated and replaced by a younger female in retaliation for reporting

---

[14] Complaint [#1] at p. 8.

sexual harassment in willful violation of Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act of 1967, as amended.

Docket No. [#1-2] at pp. 2-3.   On April 25, 2017, the EEOC issued Plaintiff a right-to-sue letter, which she received on April 27, 2017.

On July 26, 2017, exactly ninety days after she received the right-to-sue letter, Plaintiff filed the instant action, proceeding *pro se*. Along with the Complaint, Plaintiff filed an application to proceed *in forma pauperis*.   On August 24, 2017, the Court denied application to proceed *in forma pauperis* and directed her to pay the filing fee.

On September 22, 2017, Plaintiff paid the filing fee.   It is the Court's understanding from speaking with a representative of the Office of the Clerk of the Court that typically, upon payment of the filing fee, the Clerk gives blank summons forms to the plaintiff which are supposed to be filled out and returned, whereupon the Clerk issues the completed summonses to the plaintiff for service.   However, Plaintiff indicates that did not happen here.   Instead, Plaintiff states:

> [After paying the court filing fee,] I waited for the court to send documentation to continue with this case.   Initially, the Clerk's Office had told me it could take up to four months.   I finally called the clerk and was told the case had been put in a 'hold' or 'reserve' position while it was awaiting payment and was basically overlooked.   As soon as I received the necessary forms for serving the Defendant, I immediately did so.

Construing Plaintiff's papers liberally, the Court understands her to mean that after paying the filing fee, she did not receive back the court-issued summons for several months.[15]

In any event, it was not until January 12, 2018, that the Clerk issued a completed

---

[15]The docket sheet offers no notes or explanation for the period of delay between September 22, 2017, and January 12, 2018, and the docket clerk assigned to the Court has informed the undersigned that she has no recollection of the matter.

summons for Corning Community College and mailed it to Plaintiff for service. Plaintiff does not indicate when she received the summons in the mail, but the Court will assume that she received it three days later, on January 15, 2018. *See*, Fed.R.Civ.P. 6(d); *see also, Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) ("Normally it is assumed that a mailed document is received three days after its mailing."). Thereafter, Plaintiff contacted the Office of Steuben County Sheriff and requested service on Corning Community College. According to Plaintiff, the Sheriff's Office told her in sum and substance that "all proper procedures would be followed." The Sheriff's Office attempted to serve the College, though Plaintiff apparently has no personal knowledge concerning the specifics of that event. Plaintiff was not present at the time, and she has never filed or submitted an affidavit of service. However, an individual employed by the College as an Executive Office Manager has submitted an affidavit indicating that on January 29, 2018, a Deputy Sheriff purported to effect service by handing her "a single sheet of paper," namely, the Summons in this action.

On February 20, 2018, the College filed the subject motion to dismiss. The motion contends that dismissal is required for the following reasons: 1) Plaintiff has never properly served the College, since the only thing that was served was a summons, without the Complaint; 2) federal discrimination claims must be filed within ninety days after receipt of a right-to-sue letter, and although Plaintiff filed this action on the ninetieth day, she failed to make service within ninety days thereafter as required by Fed. R. Civ. P. 4(m), causing the limitations period began to run again and making the action untimely; 3) Plaintiff failed to exhaust her administrative remedies as to claims of sexual harassment against her under Title VII, since she did not mention such harassment in her EEOC charge; 4) the Complaint fails to state actionable claims for age

discrimination under the ADEA since, for example, it does not allege that Plaintiff was similarly situated to the younger employees to whom she compares herself; 5) the Complaint fails to state actionable claims for sex-based retaliation under Title VII, since Plaintiff's complaints about her co-workers' sexual misconduct with students is not covered by Title VII; and 6) the Complaint fails to state an actionable claim for disability discrimination under the ADA, since it does not allege that the College had notice of Plaintiff's disability within the applicable 300-day limitations period.

On March 19, 2018, Plaintiff filed a response [#7], asserting the following points: 1) she is not responsible for the failure to serve Defendant with a Complaint, since she hired a process server (the Sheriff) to complete the task; 2) she is not responsible for the failure to serve Defendant within ninety days after commencing the action, since the Clerk of the Court delayed returning the summons to her; 3) she is not responsible for the failure to include sex harassment allegations in the EEOC charge, since an EEOC employer told her that she did "not need to be specific";[16] 4) the Complaint adequately pleads age discrimination; 5) the Complaint adequately pleads that she engaged in protected activity when she complained about College employees' sexual misconduct toward students; and 6) the College was aware of her disability within the limitations period.

On May 18, 2018, Defendant filed a reply [#8], that essentially reiterates the points raised in Defendant's initial memorandum of law.

On October 25, 2018, the parties appeared before the undersigned for oral argument.

---

[16] Docket No. [#7] at p. 3.

At that time, the Court urged Plaintiff to consider retaining an attorney, and indicated that it would reserve decision to allow her additional time to do so. The Court directed Plaintiff to indicate in writing, by November 26, 2018, whether she had retained an attorney. On December 11, 2018, having heard nothing from Plaintiff following oral argument, the Court issued an Order [#11] indicating that briefing was closed and that it would issue a decision at its earliest opportunity.

DISCUSSION

Plaintiff's *Pro Se* Status

Plaintiff is proceeding *pro se*, and the Court has therefore reviewed her papers "with special solicitude, mindful that they must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Cicio v. Wenderlich*, 714 F. App'x 96, 97 (2d Cir. Mar. 16, 2018) (citation and internal quotation marks omitted).

Motion to Dismiss for Improper Service

Defendant has moved to dismiss the Complaint for improper service, pursuant to Rules 4(c)(1), 4(m) and 12(b) of the Federal Rules of Civil Procedure. In conjunction with that request, Defendant further maintains that this action is now barred by the 90-day statute of limitations for federal discrimination claims, since Plaintiff's failure to make timely service caused the limitations clock to run out.

The general legal principles applicable to this aspect of Defendant's motion are as follows:

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss a case for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." [Fed. R.Civ. P.] 4(c)(1). Rule 4(m) requires that a defendant be served within ninety days or else the court must dismiss the action without prejudice or order that service be made within a specified time. "When a defendant raises a Rule 12(b)(5) challenge to the

sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (internal quotation marks omitted). *Pro se* plaintiffs are not excused from compliance with Rule 4. *See Meilleur v. Strong*, 682 F.3d 56, 61-63 (2d Cir. 2012).

*George v. Roberts*, No. 17-CV-3684 (CS), 2018 WL 1517203, at *2 (S.D.N.Y. Mar. 26, 2018).

"If a plaintiff fails to show good cause [for failing to make proper service within 90 days after the complaint is filed as required by Rule 4(m),] a court [still] has discretion to extend the time to serve or to dismiss the complaint—even where dismissal, in combination with the statute of limitations, would effectively amount to dismissal with prejudice." *Simpson v. Wells Fargo Bank*, No. 15-CV-1487 (JMF), 2016 WL 10570967, at *1 (S.D.N.Y. Dec. 15, 2016) (citation omitted).

For purposes of calculating the 90-day period for service referenced in Rule 4(m), the time runs from the date the "complaint is filed." However, where a plaintiff files an application to proceed *in forma pauperis*, "the 90-day period is tolled while the *in forma pauperis* application is pending." *Stepney v. Rochester Hous. Auth.*, No. 16-CV-6173-FPG, 2018 WL 3110225, at *3 (W.D.N.Y. June 25, 2018) (citations omitted).

In the instant case, Plaintiff filed the Complaint on July 26, 2017, and simultaneously filed a motion to proceed *in forma pauperis*. It was not until August 24, 2017, that the Court denied the *in forma pauperis* application. Accordingly, for purposes of this Decision and Order, the Court will assume that the 90-day period for service under Rule 4(m) began to run on August 24, 2017. On September 22, 2017, Plaintiff paid the filing fee and, apparently, submitted a completed summons for the Clerk to issue. However, it was not until January 12, 2018, that the Clerk issued a summons to Plaintiff. On February 20, 2018, Defendant filed the subject motion to dismiss. The Court finds that it is proper to exclude the time between September 22, 2017, and

January 12, 2018, since Plaintiff had no control over the Clerk's delay in issuing the summons. Consequently, when Defendant filed the subject motion to dismiss on February 20, 2018, only 39 days had elapsed that could be charged to Plaintiff.

However, it is undisputed that Plaintiff failed to properly serve Defendant with a Complaint, and therefore service remains incomplete to this day. *See*, Fed. R. Civ. P. 4(c)(1). Additionally, the 90-day period in Rule 4(m) has now expired. Further, it appears that Defendant is correct to assert that, barring an extension of time for Plaintiff to complete service, the statute of limitations for Plaintiff to commence her federal discrimination claims has also now expired. *See*, Plaintiff's Right to Sue Letter, Docket No. [#1-1] at p. 1 ("Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.") (emphasis in original); *see also, Brunson-Bedi v. New York*, No. 15 CIV. 9790 (NSR), 2018 WL 2084171, at *7 (S.D.N.Y. May 1, 2018) (Indicating that Title VII's 90-day "statute of limitations begins to run upon receipt of the right-to-sue letter, but is tolled during the pendency of the Rule 4(m) period," and begins to run again thereafter) (citing *Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990)).

Plaintiff has not shown good cause for her failure to effect timely service after she received the summons from the Court. For example, Plaintiff cannot demonstrate good cause merely by blaming the Sheriff to failing to serve the Complaint.[17] However, as noted earlier, a lack of good

---

[17] *See, e.g., Oyewole v. Ora*, 291 F. Supp. 3d 422, 431 (S.D.N.Y. 2018) ("Here, good cause for Oyewole's failure to serve Kobalt Music and Downtown Music does not exist. Although Oyewole complains of his process server's negligence, he has not demonstrated that he actively monitored the server's performance."). In the instant action, Plaintiff vaguely indicates that she "followed" the instructions, but does not claim that she provided the Sheriff with a copy of the Complaint to be served with the Summons.

cause does not prevent the Court from extending time for service under Rule 4(m).   In view of

Plaintiff's *pro se* status and the statute of limitations issue noted earlier, as well as the fact that

Defendant received notice of the action within the limitations period and does not claim to have

suffered any prejudice, the Court exercises its discretion to extend the time for service under

Rule 4(m), retroactive to the date of Defendant's motion.   The Court will order the Clerk to issue

a new summons to Plaintiff, and will order Plaintiff to serve the summons, along with a copy of

the Complaint [#1], on Defendant within twenty-one days thereafter.   Defendant's motion to

dismiss for improper service and/or for failure to file this action within ninety days of receipt of

the right-to-sue letter is denied.

<u>Motion to Dismiss for Failure to State Claims[18]</u>

The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are

clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to
> state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,
> 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is
> facially plausible "when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,
> 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

---

[18] Although the Court has found that service on Defendant has not yet been properly achieved, it proceeds to also
consider the merits of Defendant's 12(b)(6) motion.   In that regard, although Defendant argued that service was
technically defective under Rule "12(b)," it did not expressly claim a lack of personal jurisdiction or even mention
personal jurisdiction.   Nor did it ask the Court to take up the 12(b)(6) argument only in the event that it found that
service was proper.   Accordingly, the Court proceeds on the basis that Defendant has consented to the Court's
exercise of personal jurisdiction over it at this time for the limited purpose of resolving the 12(b)(6) motion.   If
Defendant had not done so, the Court would have been required to either deny the 12(b)(6) motion as moot, or
hold it in abeyance until after Plaintiff had properly served Defendant.

In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

First, although a court must accept as true all of the allegations contained in a complaint, [19] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that

---

[19]The Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

"*Pro se* submissions are reviewed with special solicitude and must be construed liberally and interpreted to raise the strongest arguments that they suggest. Nonetheless, a *pro se* litigant's complaint must plead enough facts to state a claim to relief that is plausible on its face, and allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 854-855 (2d Cir. Nov. 14, 2018) (citations and internal quotation marks omitted).

<u>Title VII Sexual Harassment</u>

Plaintiff's Complaint in this action purports to allege that she suffered sexual harassment in violation of Title VII. Specifically, the Complaint states:

> The janitor would come into my area and hug or touch me and I told him to stop and also told my director. He texted my cell phone at 1 am and said "although I am probably wrong here, I've got a crush on you but can't get a handle on it ☺. When I told him I was not interested in him that way, he began harassing me at work, making demands that had nothing to do with my job, complaining about a recycling container that was in an open area (not mine) and yelling in my face about it (around 11/15). My director did nothing about this and replied to my email saying I need to make sure he stops and to let him know it is unacceptable behavior or that I should report it to HR.
>
> The janitor then would tell the building director that I was not doing as he demanded. The building director began causing distress by first allowing public persons to enter and use the area even though we were only allowed to have students in the area. I reported this to my director and he did tell her she was causing a dangerous situation. She came in screaming and yelling directly in my face. She then would make up scenarios and events, such as kicking students out of computer labs and tell[ing] the dean it was me when it was, in fact her and I was not even working at the time.

Docket No. [#1] at p. 8.

Defendant correctly points out, however, that none of these allegations were hinted at in Plaintiff's EEOC complaint. Defendant contends, therefore, that such allegations are not actionable, since Plaintiff failed to exhaust her administrative remedies as to them.

In response, Plaintiff states that she was told by an EEOC employee that she did not need to be specific in her complaint. Specifically, Plaintiff's response on this point consists of the following:

> When addressing the many forms of sexual misconduct that took place during my employment, I was told by the EEOC representative that I did not need to be specific until it came time to address my claim. Unfortunately, my case was

passed along to another person who never asked me to address my claims and whom I never met or even talked with.   I was told he did not have time for all the specifics of the claims.   He never returned a call and did not have my documentation.   I was also told he was too swamped with cases and that was the reason it was sent to a court.

Docket No. [#7] at p. 3.

It is well settled that before bringing a claim in federal district court under Title VII, the ADA or the ADEA, a plaintiff must first exhaust administrative remedies by filing a charge with the EEOC and obtaining a decision from that agency.   *See also, Hodges v. Holder*, No. 12–805–cv, 547 F. App'x 6, 7 (2d Cir. 2013) ("[A] plaintiff bringing claims under the ADA or the Rehabilitation Act must exhaust certain administrative remedies before initiating suit in the district court.").

"[A] plaintiff typically may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in [her] EEOC charge." *Hodges v. Holder*, 547 F. App'x at 7 (*quoting Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir.2001)).

This Circuit has recognized that a claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.   In this inquiry, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving.   The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate [the alleged] discrimination . . .[.]   The "reasonably related" exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering.

*Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (footnotes, citations and internal quotation marks omitted).

In the instant case, the claims of sexual harassment in Plaintiff's Complaint [#1] manifestly were not included in her EEOC complaint, and are not reasonably related to the claims that were included in the EEOC complaint. Plaintiff gave no indication in her EEOC charge that she personally was the target or recipient of any sexual harassment. Accordingly, it is clear from the face of the Complaint that Plaintiff did not exhaust her sexual-harassment claims. However, liberally construing Plaintiff's response, as the Court must, she has raised an issue of equitable modification, based on statements allegedly made to her by an EEOC employee concerning what she needed to include in her EEOC complaint.

Title VII's exhaustion requirement "is subject to equitable defenses," *Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006), and some courts have held that it may be appropriate to apply equitable principles to deny a motion to dismiss an otherwise unexhausted or untimely discrimination claim, where a plaintiff has been misled by EEOC employees. For example, in *Angotti v. Kenyon & Kenyon*, 929 F. Supp. 651, 658 (S.D.N.Y. 1996), where the defendant had moved to dismiss unexhausted claims, the court stated:

> I find that the record before me presents issues of fact which, if true, would provide an excuse based on equitable considerations for the plaintiff's apparent failure to include explicitly the charge of retaliation in the EEOC charge she filed. Here the plaintiff has presented documentary evidence that she presented her claims of retaliation to the EEOC when she filed her charge of sex and disability discrimination. She has also averred that the EEOC interviewer assured her that her retaliation claims were encompassed by the charge she did timely file. . . .

> [T]here is evidence in this case that [the plaintiff] was affirmatively mislead by the EEOC interviewer.

The court denied the motion to dismiss, stating, "Whether this plaintiff did in fact rely on the interviewer's misinformation is a question of fact that remains undetermined and cannot be resolved on a motion to dismiss." *Id.*

At the same time, however, a plaintiff bears a heavy burden when attempting to assert equitable defenses, and vague and conclusory assertions of misconduct are insufficient. *See, Lomako v. New York Inst. of Tech.*, 440 F. App'x 1, 3 (2d Cir. 2011) ("*Lomako*") ("Lomako's assertion that his union and the defendants intentionally misled him for the purpose of preventing him from filing a complaint with the DHR or EEOC is vague and conclusory and does not suggest a plausible basis for equitable tolling."); *see also, Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) ("The burden of demonstrating the appropriateness of equitable tolling, however, lies with the plaintiff. . . . Boos's conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling.").

In the *Lomako* case, cited in the preceding paragraph, the plaintiff-appellant alleged that he was entitled to equitable tolling because his employer and union misled him, stating:

> Lomako was also not informed when he requested guidance from his employer and union in pursuing his employee's rights. Instead, Defendants and Union actively misled Lomako regarding a cause of action, lulled him into inaction, and failed to comply with EEOC regulations requiring employers to post notices advising employees of their legal rights relating to employment discrimination.

Lomako [believed] the promises repeatedly made by [the employer] and the union, in 2002, 2003, 2004, and 2005, that he would be protected from discrimination, harassment and retaliation and that he should not bring up his discrimination complaint or he would risk certain retaliation. All promises to stop discrimination and harassment were left unfulfilled. Defendants and the union made these promises with the intention of giving incorrect information in order to prevent Lomako from filing a complaint with outside agencies and courts through intimidation of retaliation. Defendants should not be able to assert a statute of limitations defense because Defendants' conduct caused Lomako to delay the bringing of the lawsuit.

Second Circuit Docket, *Lomako v. New York Institute of Technology, et al.*, Case No. 10-2447-cv, Docket No. [#43], Brief for Appellant Gennady Lomako at pp. 55-56 (citations to the record omitted). However, as noted earlier, the Second Circuit rejected the above-quoted equitable tolling argument, as being "vague and conclusory" and as "not suggest[ing] a plausible basis for equitable tolling." *Lomako v. New York Inst. of Tech.*, 440 F. App'x at 3; *see also, Perez v. Harbor Freight Tools*, No. 15-CV-05983 ADS SIL, 2016 WL 4734635, at *7 (E.D.N.Y. Sept. 9, 2016) (Rejecting equitable tolling claim as too vague, stating: "[E]ven assuming *arguendo* that information provided by an EEOC official could justify the application equitable tolling, the Plaintiff's affidavit is far too vague to invoke equitable tolling in this case. For example, in the cases cited by the Plaintiff, the plaintiffs have offered evidence in the form of a letter from an EEOC official or specific details about his or her contacts with the EEOC which were misleading."), *aff'd*, 698 F. App'x 627 (2d Cir. 2017).

Here, the Court similarly finds that Plaintiff's allegations in support of equitable modification are too vague and insubstantial to warrant denying Defendant's motion. To begin, Plaintiff offers only her own unsworn statement, which is more vague than the

statement which the Second Circuit rejected in *Lomako*.  Indeed, Plaintiff's statement does not even identify the EEOC employees with whom she spoke.  Moreover, the details that Plaintiff has included do not strike the Court as the type that would plausibly establish a basis to apply equitable modification.   Specifically, Plaintiff indicates that she omitted allegations concerning alleged sexual harassment from the EEOC charge because an EEOC employee told her that she did not need to include the "specifics" of her claims.   However, far from merely omitting specific details, the EEOC charge contains no reference whatsoever to any sexual harassment committed against Plaintiff. Even assuming the truth of Plaintiff's explanation, there is no indication that the EEOC employee prevented or discouraged her from at least referencing the alleged sexual harassment.

For all of the foregoing reasons, Defendant's motion to dismiss the Title VII sexual harassment claims, for failure to exhaust administrative remedies, is granted. To the extent that Plaintiff is attempting to assert similar claims under the NYSHRL, they are not subject to the same administrative-exhaustion requirement, and are therefore not dismissed. *See, Graciani v. Patients Med., P.C.*, No. 13-CV-2751 NGG RLM, 2015 WL 5139199, at *17 (E.D.N.Y. Sept. 1, 2015) ("Unlike Title VII, the NYSHRL does not require a plaintiff to exhaust administrative remedies prior to bringing a civil action.") (citing *Ross-Caleb v. City of Rochester*, 512 F. App'x 17 (2d Cir. 2013), in which the Circuit Court indicated that NYSHRL claims "are not subject to the procedural requirements of Title VII claims.")

<u>Title VII Retaliation</u>

The Complaint in this action purports to allege that Plaintiff suffered retaliation in violation of Title VII, after she complained to College Officials about sexual misconduct committed by two different college employees against students. "To make out a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted).

Defendant contends that Plaintiff has not plausibly stated a claim for retaliation under Title VII, because her alleged protected activity did not involve conduct covered by Title VII. In particular, Defendant argues that Plaintiff allegedly reported the harassment of college students by a college professor and a college employee, respectively, which is not employment discrimination, and is therefore not covered by Title VII.

Plaintiff's response [#7] does not address this specific argument, except insofar as it states:

> Although the elderly professor who works for [the College] and donates money each year and/or each time a student claims sexual harassment may not be deemed by the defendant as sexual harassment to me, it most certainly was something [the College] did not want spoken about. Therefore, it was part of the numerous retaliation efforts when [the College] conveniently trumped up false allegations to terminate my employment.

Docket No. [#7] at p. 5.

Title VII prohibits employment discrimination; it does not prohibit discrimination by

employees against non-employees, and complaints about such discrimination are not protected activity under Title VII. *See, e.g., Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 686 (S.D.N.Y. 2018) ("[R]eporting discrimination by an employer against a non-employee is not cognizable under Title VII.   Complaining of a coworker's discriminatory treatment of nonemployees cannot, as a matter of law, amount to an 'unlawful employment practice' under the statute.") (citations and internal quotation marks omitted).

More specifically, sexual harassment of a college student by a college professor or college employee is not covered by Title VII.   Addressing this precise issue, other courts in this Circuit have held that a college employee's complaint about a professor's inappropriate conduct with students was not protected activity under Title VII:

> As [the defendant college] argues, to the extent that Saliba maintains that she was retaliated against for reporting sexual harassment of a student by a faculty member, the Complaint fails to state a claim for retaliation. Saliba's claim of retaliation for opposing discrimination by a co-employee against a non-employee is not cognizable under Title VII; such activity does not constitute "protected activity," as Saliba could not reasonably believe that she was opposing racial discrimination in an employment practice.

*Saliba v. Five Towns Coll.*, 991 F. Supp. 2d 449, 451 (E.D.N.Y. 2014); *see also, Baldwin v. New York*, No. 13-CV-485-HBS, 2015 WL 5097249, at *7 (W.D.N.Y. Aug. 28, 2015) ("Here, the conduct that students reported to Baldwin and that Baldwin reported to Buffalo State administrators did not fall within the scope of Title VII. Students complained to Baldwin that Roberts used sexually inappropriate language when lecturing them in the classroom. *Courts have repeatedly held, however, that a teacher's complaints about*

*alleged discrimination directed against a student do not constitute opposition to an unlawful employment practice.* As far as the Court can tell from the record, the students in question were simply students who registered for one of Roberts's courses. The students were not interns or researchers and were not under any sort of employment control by Roberts. *As broad as Title VII's protections are, Congress wrote the statute to address discrimination in the workplace, not the classroom.*") (emphasis added; citations omitted), opinion clarified on denial of reconsideration, No. 13-CV-485-HBS, 2015 WL 6696505 (W.D.N.Y. Nov. 2, 2015), *aff'd sub nom. Baldwin v. New York State, State Univ. of New York, Coll. at Buffalo*, 690 F. App'x 694 (2d Cir. 2017).

Of course, for purposes of determining whether Plaintiff's complaints about alleged sexual misconduct qualify as "protected activity" under Title VII, it is not required that the misconduct actually be prohibited by Title VII. Nevertheless, Plaintiff must at least have believed, reasonably and in good faith, that the misconduct violated Title VII:

> An employee's complaint may qualify as protected activity, satisfying the first element of this test, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. And not just any law—the plaintiff is required to have had a good faith, reasonable belief that she was opposing an employment practice made unlawful by Title VII.

*Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d at 14–15 (citations and internal quotation marks omitted).

Here, Plaintiff does not claim that she actually or reasonably believed the alleged sexual misconduct by college staff against students violated Title VII, or any other particular law. Rather, she merely contends that her complaints should qualify as protected activity since she complained about something that the College "did not want

spoken about." However, the Court disagrees and finds that Plaintiff has not plausibly alleged that she engaged in protected activity under Title VII.

For the foregoing reasons, Plaintiff's Title VII retaliation claim is dismissed. To the extent Plaintiff is asserting a similar claim under the NYSHRL, it is also dismissed. *See, Brooking v. Mattox*, No. 115CV0510GTSCFH, 2018 WL 1441275, at *21 (N.D.N.Y. Mar. 21, 2018) ("Courts within the Second Circuit have analyzed whether a plaintiff engages in a protected activity for purposes of a retaliation clam pursuant to § 1981, § 1983, and the NYHRL under the same standard as whether a plaintiff engages in a protected activity for purposes of a retaliation claim pursuant to Title VII.") (collecting cases).

Age Discrimination

Plaintiff, who was born in 1961, asserts an age discrimination claim that has two aspects: First, she alleges that she was terminated and replaced by someone younger; and second, she contends that she was treated differently than two younger employees when she requested "disability-based accommodations."[20]

In general, "[t]o plead a claim under the ADEA, a plaintiff must allege: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination based on age." *Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 10 (2d Cir. Apr. 2, 2013).

---

[20] Complaint [#1] at p. 9.

With regard to the first aspect of Plaintiff's age-discrimination claim, she implies that she was fired and *replaced* by a less-qualified 23-year-old female. If that is what had actually been pleaded, it would be sufficient to state a claim under the ADEA. *See, e.g., Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015) ("The fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage."). However, a careful reading of Plaintiff's submissions reveals that Plaintiff was not actually replaced by the younger employee. Nor, indeed, was Plaintiff passed-over for a position in favor of the younger employee.[21] Instead, Plaintiff was fired from her part-time position after she objected to her working conditions, and the younger employee was subsequently hired to fill the vacant full-time Learning Specialist's position that Plaintiff had hoped to obtain.[22] Notably, the Complaint does not indicate how long after Plaintiff's firing the other position was filled. In any event, Plaintiff was fired before she was interviewed for the full-time position, making it impossible to know what might have happened if she had continued working and participated in the interview process. There are no facts plausibly suggesting that the firing itself was related to Plaintiff's age. Nor did the College have to fire Plaintiff in order to hire the younger individual to fill the full-time position; Plaintiff could have simply remained in her

---

[21] Such a scenario would have required that both employees participated in the hiring process, which did not occur here.

[22] In her EEOC complaint (Docket No. [#1-2]), Plaintiff made the following statement: "After I was terminated my position was changed to full-time and was given to a woman approximately 23 years of age." (emphasis added). Based on the more-detailed explanations contained in Plaintiff's submissions, it is clear that there were actually two different positions all along, one part-time (which Plaintiff held) and one full-time (which Plaintiff never held). Plaintiff's part-time position was therefore not changed to full-time, and the foregoing statement in the EEOC complaint was therefore inaccurate.

part-time position.

In sum, the Complaint plausibly suggests that at some unspecified time after Plaintiff's employment was terminated for reasons unrelated to her age, someone younger was hired to fill a different position in which Plaintiff had been interested, but which she had never held. Such facts do not plausibly plead that Plaintiff suffered an adverse employment action (not being hired) under circumstances permitting an inference of age-based discrimination. Accordingly, that aspect of Plaintiff's ADEA claim is dismissed.

With regard to the second aspect of Plaintiff's age-discrimination claim, the Complaint suggests that two younger females (including the aforementioned 23-year-old) made requests for disability-related accommodations that were granted, while Plaintiff's requests for accommodations were "ignored." Preliminarily, this purported age-based disparate-treatment claim is unexhausted, as it was not included in Plaintiff's EEOC complaint. The claim is barred for that reason alone.

Alternatively, the Complaint also fails to plausibly plead an ADEA disparate-treatment claim. To demonstrate this type of "disparate treatment" claim under the ADEA,

> [a] plaintiff can raise an inference of discrimination based upon disparate treatment if the plaintiff demonstrates "more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312. However, in doing so, a plaintiff "must show that she was similarly situated in all materials respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin American Inc.*, 756 F.3d 219, 230 (2d Cir. 2014).

*Jablonski v. Special Counsel, Inc.*, No. 1:16-CV-5243 (ALC), 2017 WL 4342120, at *4

(S.D.N.Y. Sept. 28, 2017), on reconsideration in part, No. 1:16-CV-05243 (ALC), 2018 WL 3979591 (S.D.N.Y. Aug. 20, 2018).

The instant Complaint purports to allege that Plaintiff was treated differently than two younger women who also requested "disability-based accommodation." The Complaint identifies the first woman as the same "23-year-old female part-time employee" who was hired to fill the full-time Learning Specialist's position. The Complaint describes the second woman as a "younger (30's) co-worker," who didn't want to drive to the distant campus or to work at night because she was pregnant.

However, the Complaint does not plausibly allege that either of those women was similarly situated to Plaintiff in all material respects. To begin with, the Complaint does not allege that the 23-year-old had (or claimed to have) any disability, or that she actually requested "disability-based accommodation." Instead, the pleading merely asserts that she "refused" to work at the distant campus, "and did not have to work nights." Neither is the second woman alleged to have had a disability or to have requested "disability-based accommodation;" rather, the pleading merely indicates that she was pregnant and "did not want to" work at the distant campus or to work at night. Further, the pleading does not indicate that the pregnant woman had the same job title or duties as Plaintiff. Accordingly, Plaintiff has not pleaded that she was treated differently than similarly-situated younger employees with regard to requests for disability-based accommodations.

For all of the above-stated reasons, Plaintiff's ADEA claims are dismissed. Any claims for age-based discrimination under the NYSHRL are also dismissed. *See, Benson*

*v. Family Dollar Operations, Inc.*, No. 17-2242, --- Fed.Appx. --- , 2018 WL 5919905, at

*1 (2d Cir. Nov. 13, 2018) ("Claims of age discrimination under the New York State Human

Rights Law ("NYSHRL") are analyzed under the same standards as ADEA claims.")

(citing *Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 70

n.2 (2d Cir. 2004)).

<u>Disability Discrimination</u>

Finally, Plaintiff's Complaint purports to state disability discrimination claims under

the ADA and NYSHRL, involving a failure-to-accommodate and retaliation.

Defendant contends that the claims must be dismissed, since "Plaintiff has failed

to adequately plead that she was disabled or that the College ha[d] notice of her alleged

disability."[23]  Defendant's argument on this point in its moving brief [#5-4] is sparse,

however, consisting only of the following two sentences:

> Here, Plaintiff's Complaint is limited to allegations for the time period from November 2014 through June 2015, prior to the applicable time period in this case. (See Compl., at 7).   She fails to plausibly allege that she was disabled or that the College had notice of her disability within the statute of limitations period.

Defendant briefly reiterates these statements in its reply memo of law [#8].

Defendant has not shown that it is entitled to relief on this aspect of its motion.

Initially, the Court disagrees with Defendant's contention that Plaintiff has not pled that

she is disabled.  The Complaint lists a number of allegedly-disabling conditions, and

Defendant has not attempted to explain why they fail to constitute a disability under the

relevant statutes.

---

[23]  Def. Memo of Law [#5-4] at p. 24.

The Court also disagrees with the contention that Plaintiff's allegations of disability discrimination are limited to the period "November 2014 through June 2015." In that regard, Defendant cites to page seven of the Complaint, but the Court does not concur with Defendant's interpretation of that page. Specifically, page seven of the Complaint indicates, *inter alia*, that Plaintiff contacted her Human Resources Director regarding her alleged disability in November 2015, and that she had surgery on her back in June 2015, but does not indicate that her disability claims are limited to that period. The reference to "November 2014" on page seven involves Plaintiff's complaint about sexual harassment of students by staff, not her disability. Moreover, other sections of the Complaint indicate that Plaintiff requested accommodations for her physical ailments as late as February, 2016, when her work assignment and location was changed.[24]

Accordingly, Defendant's application to dismiss Plaintiff's disability claims (ADA and NYSHRL) is denied.

CONCLUSION

Defendant's motion to dismiss [#5] is granted in part and denied in part. The application is denied as to Plaintiff's disability-discrimination claims under the ADA and NYHRL and her sexual harassment claim under the NYHRL, but is otherwise granted.

Pursuant to Fed.R.Civ.P. 4(m), Plaintiff's time for service is extended, *nunc pro tunc*. The Clerk of the Court is directed to issue a new summons to Plaintiff. Within

---

[24] Complaint [#1] at p. 9 ("When my hours were switched to a different campus 40 minutes away and to nights I asked why stating how difficult it was for me physically and even visually[.] … [M]y requests for disability-based accommodation were ignored."); see also id. at p. 7 (Similar allegations referring to requests for accommodation in February 2016).

twenty one (21) days after receiving the summons, Plaintiff shall have the summons and a copy of the Complaint served on Defendant.   In that regard, Defendant's submissions indicate that Corning Community College is governed by a Regional Board of Trustees ("RBOT"), of which Carl H. Blowers is the Chairman.[25]   New York Civil Practice Law and Rules ("CPLR") § 312 indicates that service "upon a board or commission having a chairman or other presiding officer, secretary or clerk, by whatever official title he is called, may be made by delivering the summons to him."   Accordingly, it appears that service of the Summons and Complaint should be made upon Mr. Blowers, as the Chairman of the College's RBOT.   Plaintiff shall file the process server's affidavit of service with the Clerk of the Court.   Upon service of the Summons and Complaint, Defendant shall respond to the claims that have not been dismissed.

SO ORDERED.

Dated:    Rochester, New York
             January 30, 2019

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[25] Docket No. [#5-2], Declaration of Carl H.Blowers.